## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MARY WOLOSYZN, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>DEMAND FOR JURY TRIAL</u> |
| GENERAL MILLS, INC., | |
| Defendant. | |

Plaintiff Mary Wolosyzn ("Plaintiff"), a resident of Illinois, individually and on behalf of others similarly situated, by and through his undersigned counsel, hereby files this Class Action Complaint for Equitable Relief and Damages, against Defendant, General Mills, Inc., and its wholly owned subsidiaries (collectively, "General Mills" or "Defendant"), and alleges as follows:

1.      Defendant aggressively advertises and promotes its Nature Valley Products (as defined below) as "Made with 100% Natural Whole Grain Oats" (*see* Product Image, *infra*.). These claims are false, misleading, and deceptive. The Products at issue do not comprise "100% natural whole grain oats," but instead contain the chemical glyphosate, a potent biocide, probable human carcinogen, and human endocrine disruptor, with detrimental health effects that are still becoming known.

2.      Although the exact source of glyphosate in these oat Products is known only to General Mills and its suppliers, glyphosate most likely makes its way into the Products when the oat crops are sprayed with the chemical in order to dry them out and

produce an earlier, more uniform harvest—a practice with no health benefits, meant only to increase yield and, therefore, profit.

3.     Plaintiff brings this deceptive advertising case on behalf of consumers who purchased the oat Products, and seek relief including refunds to purchasers for the falsely advertised Products and a court-ordered corrective advertising campaign to inform the public of the true nature of General Mills' glyphosate-contaminated Products.

## INTRODUCTION

4.     This is a proposed consumer protection class action against General Mills for injunctive relief and economic damages based on misrepresentations and omissions committed by General Mills regarding Nature Valley, which General Mills falsely and deceptively labels and markets as "Made with 100% Natural Whole Grain Oats." In fact, the Products contain glyphosate, a potent and *unnatural* biocide.

5.     Specifically, the Products at issue[1] include, but are not limited to:

    a.    Crunchy granola bars (Oats 'n Honey, Peanut Butter, Maple Brown Sugar, Vanilla Almond Nut & Seed, Coconut, Pecan, and other varieties);

    b.    Trail Mix chewy granola bars (Fruit & Nut, Dark Chocolate & nut, and other varieties);

    c.    Sweet & Salty Nut granola bars (Peanut, Almond, and other varieties);

    d.    Breakfast Biscuits (Honey, Blueberry, Lemon Poppy Seed, and other varieties);

---

[1] Discovery may demonstrate that additional General Mills products are within the scope of this Complaint.

e.      Biscuits (with Almond Butter, with Peanut Butter, and other varieties);

f.      Oatmeal Squares (Blueberry, Peanut Butter, Cinnamon Brown Sugar, Banana Bread & Dark Chocolate, and other varieties);

g.      Oatmeal Bars (Peanut Butter, Cinnamon Brown Sugar, and other varieties); and

h.      Oatmeal Bistro Cups (Brown Sugar Pecan, Apple Cinnamon Almond, and other varieties) (collectively, "Nature Valley" or the "Products").

6.      Aware of the health risks and environmental damage caused by artificial-chemical-laden foods, especially packaged foods, consumers increasingly demand foods that are natural and whole, and that omit artificial chemicals.

7.      General Mills knows that consumers seek out and wish to purchase whole, natural foods that do not contain artificial chemicals, and that consumers will pay more for foods that they believe to be natural than they will pay for foods that they do not believe to be natural.

8.    To capture this growing market, General Mills labels Nature Valley as "Made with 100% Natural Whole Grain Oats."



*Fig. 1, Nature Valley Crunchy Granola Bars Packaging*



*Fig. 2, Nature Valley Crunchy Granola Bars Nutrition Information*

9.    No reasonable consumer, seeing these representations, would expect that the oats in Nature Valley to contain anything unnatural, or anything other than the labeled ingredients.

10.    However, the oats in Nature Valley, despite the labels, do contain something that is unnatural, namely, glyphosate.

11.    Glyphosate is not "Natural." Glyphosate is a synthetic herbicide, probable human carcinogen, and human endocrine disruptor, with additional health dangers rapidly becoming known.

12.    Tests conducted by an independent laboratory using liquid chromatography mass spectrometry with a reporting limit of 0.02 parts per million (ppm), revealed the amount of glyphosate in the Nature Valley to be 0.45 ppm.

13. Glyphosate is "legal" in connection to food products, insofar as the law does not preclude the use of glyphosate in treating and harvesting crops. General Mills, however, did not and does not simply claim that its Nature Valley Products are "legal;" instead, it claims the Products are "Natural" and "Made with 100% Natural Whole Grain Oats." See Fig. 1.

14. By deceiving consumers about the nature, quality, and/or ingredients of its Nature Valley Products, General Mills is able to sell a greater volume of Nature Valley, to charge higher prices for Nature Valley, and to take away market share from competing products, thereby increasing its own sales and profits.

15. Consumers lack the scientific knowledge necessary to determine whether the oats in Nature Valley are in fact "100% Natural," to know or to ascertain the true ingredients and quality of Nature Valley, or to assess the safety of ingesting glyphosate. Reasonable consumers must and do rely on General Mills to report honestly what Nature Valley contains and whether the ingredients are in fact "100% Natural."

16. Across all Nature Valley products, General Mills conceals the presence of glyphosate, fails to inform consumers of the presence of glyphosate, and fails to inform consumers about the harmful effects of ingesting glyphosate.

17. General Mills intended for consumers to rely on its representations and hundreds of thousands of reasonable consumers did, in fact, so rely. As a result of its false and misleading labeling, and omissions of fact, General Mills was able to sell Nature Valley to hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

18.     General Mills' false and misleading representations, failure to accurately inform, and omissions of fact violate the Minnesota Consumer Fraud Act, Minnesota Unlawful Trade Practices Act, Minnesota Uniform Deceptive Trade Practices Act, and common law.

19.     Plaintiff is not seeking damages for any personal injuries in this Complaint[2]; rather, this case is based on General Mills' misrepresentations and omissions regarding the Nature Valley Products purchased by Plaintiff and Class Members during the class period, defined below.

20.     Plaintiff and numerous other Class Members who purchased the Products suffered economic damages in a similar manner because they purchased, purchased more of, or paid more for Nature Valley than they would have had they known the Products were not "Natural," or "Made with 100% Natural Whole Grain Oats," as labeled and marketed.

21.     When a product purports to include "100% Natural" ingredients, consumers not only are willing to pay more for the product, but they also expect it to be free of synthetic chemicals.

22.     Had Plaintiff and Class Members known at or before the time of purchase that the Products, in fact, contain glyphosate, a synthetic biocide with human health

---

[2] All potential claims for individual tort relief by Plaintiff and Putative Class Members are preserved and outside the scope of the damages sought in this litigation.

effects, they would not have purchased or used the Products, and they will not continue to use them unless and until remedial action is taken.

23.    Plaintiff, and all other similarly situated consumers, did not bargain for Products that contain unnatural ingredients in exchange for their payment of the purchase price.  Plaintiff contends that the Products are not "Natural," or "Made with 100% Natural Whole Grain Oats," as labeled and marketed, and, as a result, such representations mislead consumers into purchasing the Products.

24.    Plaintiff brings this action to stop General Mills' deceptive and misleading practices.

## JURISDICTION AND VENUE

25.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA").  CAFA explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff is a resident and citizen of Illinois and, on information and belief, defendant General Mills is a citizen of Delaware and Minnesota.  On information and belief, the amount in controversy exceeds $5,000,000.

26.    This Court has personal jurisdiction over the Defendant in this case. General Mills has its principal place of business in Minnesota and transacts business in Minnesota.

27.    Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of Nature Valley, occurred within this District.

## PARTIES

28.    At all times mentioned herein, General Mills, Inc. was a Delaware corporation headquartered in Minneapolis, Minnesota, and a leading global manufacturer and marketer of branded consumer foods sold through retail stores.  General Mills was, at all relevant times, engaged in commercial transactions throughout the State of Minnesota, including this judicial District, including internet sales.

29.    General Mills makes, markets, sells, and distributes food products under various trademarks, including Nature Valley.  General Mills manufactures and/or causes the manufacture of oat-based food products, and markets and distributes the products in retail stores in Minnesota and throughout the United States.

30.    Plaintiff Mary Wolosyzn is a citizen of the State of Illinois and a resident of Clarendon Hills, Illinois.  She purchased Nature Valley Crunchy Granola Bars in the Oats and Honey and Peanut Butter flavors on several occasions in 2013 from Target stores in Willowbrook, Illinois, and Chicago, Illinois.

31.    In deciding to make these purchases, Plaintiff saw, relied upon, and reasonably believed General Mills' representations that Nature Valley is natural, healthful, and "Made with 100% Natural Whole Grain Oats."

32.     When a product purports to include "100% Natural" ingredients, consumers not only are willing to pay more for the product, but they also expect it to be pesticide-free.

33.     Plaintiff was willing to pay more for Nature Valley Products because she expected the Products to be free of synthetic and unnatural compounds. Had Plaintiff known at the time that Nature Valley contains the unnatural biocide glyphosate, she would not have purchased or continued to purchase Nature Valley.

34.     Had Plaintiff been informed of the presence of glyphosate in Nature Valley Products, she would not have purchased or continued to purchase Nature Valley.

## FACTUAL ALLEGATIONS

35.     American consumers increasingly and consciously seek out natural and healthful food products. Once a small niche market, healthful, natural foods are now sold by conventional retailers and their sales continue to soar. The trend toward natural and healthful food products includes, for many consumers, a preference for whole grains over processed or otherwise refined grains.

36.     Consumers value natural foods, including whole grains, for a myriad of health, environmental, and political reasons, including avoiding chemicals and additives, attaining health and wellness, helping the environment, and financially supporting companies that share these values.

A.    **Nature Valley's "Natural" Brand Image**

37.    Hoping to capture this growing market, General Mills markets Nature Valley as a natural and healthful choice that is "Made with 100% Natural Whole Grain Oats." General Mills does not disclose the presence in Nature Valley of glyphosate.

38.    General Mills cultivates an image of Nature Valley as a healthful, wholesome, impurity-free brand—the kind of company whose label claims can be trusted—stating on its website:  "*Nature Valley* created the granola bar category in 1975. Much has changed in nearly four decades.  One thing hasn't.  No matter how many new flavors we create, be assured that with *Nature Valley* you're always getting *The Taste Nature Intended.*"  *See*  http://www.generalmills.com/Brands/Snacks/nature-valley,  last visited July 20, 2016 (italics in original).

39.    General Mills presents itself as a leader in the production of oats, touting their health benefits and environmentally friendly properties:

> Oats are at the core of General Mills' business.
>
> Our company has brought the power of oats to consumers since 1941, when we introduced *Cheerioats* – the first ready-to-eat cereal made from oats.
>
> We believe in the goodness of oats.  They are nutrient-dense, affordable, naturally gluten-free and come in convenient forms.
>
> Oats are unique in many ways:
>
> - They have the highest concentrations of protein among common varieties of whole grains, more soluble fiber than most other whole grains, are a top source of the soluble fiber, beta-glucan, and contain unique antioxidants.
>
> - Oats naturally taste good and, when roasted, develop a nutty oat flavor.
>
> - Oats are a sustainable crop – oats are a hardy grain that require little water to grow.

11

*See* http://www.generalmills.com/en/Health/well-being/whole-grain, last visited July 20, 2016.

40.     General Mills also promotes the health benefits of its products, explaining, "Eating grains, especially whole grains, provides health benefits. People who eat whole grains as part of a healthy diet have a reduced risk of some chronic diseases. Grains provide many nutrients that are vital for the health and maintenance of our bodies." *See* http://www.generalmills.com/en/Health/well-being/whole-grain, last visited July 20, 2016.

41.     Nowhere on its website does General Mills mention the presence of glyphosate in Nature Valley.

42.     Nowhere on its website does General Mills warn of the health risks of ingesting glyphosate.

43.     Nowhere on its website does General Mills explain the environmental risks presented by glyphosate.

**B.     Nature Valley is Presented as "Natural" and "Healthy"**

44.     General Mills prominently labels Nature Valley Crunchy Oats 'n Honey granola bars as "Made with 100% Natural Whole Grain Oats." These representations appear on the front label of the product.

45.     Should any consumer seek additional information from the back of the label, General Mills lists the product's main ingredient as "Whole Grain Oats."

46.    General Mills states, on the packaging of its Nature Valley Crunchy Oats 'n Honey granola bars, "Nature Valley™ Crunchy bars start with the **best ingredients** from nature like 100% natural whole grain oats and honey."

47.    Should any consumer seek further information, General Mills' Nature Valley website declares: "Nature Valley Crunchy bars start with the best ingredients from nature like 100% natural whole grain oats and honey." *See* www.naturevalley.com/crunchy/, last visited August 11, 2016.

48.    The Nature Valley website states: "Our bars come straight from nature. Sun-dried raisins. Crunchy peanuts. Sweet cranberries. Wholesome almonds and oats. And an occasional dash of rich dark chocolate. Take them on the trail, put them in your pack, stock a drawer at work – no matter where you are, our bars keep you going for all of life's adventures." *See* http://www.naturevalley.com/nature_valley_products/, last visited August 11, 2016.

49.    Regarding Nature Valley Biscuits, the website states: "Nature Valley Biscuits® combine a delicious crispy texture, and the goodness of 100% natural whole grain oats." *See, e.g.,* www.naturevalley.com/nv-products/blueberry-biscuits/, last visited August 11, 2016.

50.    Regarding Nature Valley Oatmeal Bistro Cups, the website declares: "Made with 100% natural whole grain oats simply brew, stir and enjoy!" *See* www.naturevalley.com/nv-products/brown-sugar-pecan-bistro-cups/, last visited August 11, 2016.

51. Regarding Nature Valley Oatmeal Squares, the website declares: "100% nature whole grain oats soft baked to perfection." *See* http://www.naturevalley.com/nv-products/cinnamon-brown-sugar-oatmeal-squares/, last visited August 11, 2016.

52. Several retailer websites extol the purported health benefits of the Products: "It's not only wholesome but also ***healthy*** and makes snack time a lot of fun." *See* http://www.annassupermarket.com/#!product/prd1/2489707351/nature-valley-value-pack-24-bars, last visited August 11, 2016; https://www.diapers.com/p/nature-valley-crunchy-granola-bars-value-pack-oats-n-honey-0-74-oz-24-ct-210256, last visited August 11, 2016; https://www.amazon.com/Nature-Valley-Oats-Honey-Value/dp/B00MFC60K0, last visited August 11, 2016 (emphasis added).

53. Upon information and belief, General Mills has profited enormously from its falsely marketed products and its carefully orchestrated label and image.

54. Representing that a product is "Natural," "Made with 100% Natural Whole Grain Oats," and "healthy" is a (false) statement of fact.

55. Failing to disclose that a product contains glyphosate after touting a product as "Natural" and "Made with 100% Natural Whole Grain Oats" and "healthy" is an omission of relevant and material fact.

56. Consumers reasonably believe that a product or ingredient represented as natural or 100% natural does not contain synthetic ingredients and that a product labeled "Made with 100% natural whole grain oats" does not contain synthetic chemicals in its oat ingredients.

57.    Consumers reasonably believe that a product or ingredient represented as natural or 100% natural does not contain biocides and that a product labeled "Made with 100% natural whole grain oats" does not contain a biocide in its oat ingredients.

58.    In 2014, the Consumer Report National Research Center conducted a nationally representative phone survey to assess consumer opinion regarding food labeling. *See* http://www.greenerchoices.org/pdf/consumerreportsfoodlabelingsurveyjune 2014.pdf, last visited August 11, 2016.

59.    Sixty-six percent of all respondents in the Consumer Reports survey said that a "natural" label on packaged and processed foods means that "no toxic pesticides were used." *See id.*

60.    Consumers reasonably believe that a product labeled "Made with 100% Natural Whole Grain Oats," especially a product whose main ingredient is listed as "Whole Grain Oats," does not contain unnatural, synthetic ingredients.

61.    General Mills knows and intends that when consumers see the product advertisements or labels promising the product is "Natural," "Made with 100% Natural Whole Grain Oats," and "healthy" consumers will understand that to mean that, at the very least, the oats or other ingredients in the product do not contain synthetic ingredients or harmful chemicals.

62.    Consumers reasonably expect that if a product contains a harmful substance, the product will not be labeled as "Natural" and "Made with 100% Natural Whole Grain Oats".

**C.    Glyphosate Is Neither Natural Nor Healthful**

63.    General Mills' representations that Nature Valley is "Natural," "100% Natural," or "Made with 100% Natural Whole Grain Oats" are false.  In fact, quantitative testing revealed that Nature Valley contains glyphosate.

64.    Nature Valley thus is not "Natural" or "100% Natural," and does not contain "100% Natural Whole Grain Oats," and labeling the Products as such is misleading and deceptive.

65.    Because glyphosate is a probable human carcinogen and endocrine disruptor, Nature Valley is not "Healthy."

66.    General Mills has a duty to disclose the presence of glyphosate.

67.    On information and belief, glyphosate is, by volume, the world's most widely produced herbicide.

68.    Glyphosate was invented by the agrochemical and agricultural biotechnology corporation, Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup, after DDT was banned.[3]

69.    By the late 1990s, use of Roundup had surged as a result of Monsanto's strategy of genetically engineering seeds to grow food crops that could tolerate high doses of the herbicide.  The introduction of these genetically engineered seeds enabled farmers more easily to control weeds on their crops.[4]

---

[3] *See* https://www.organicconsumers.org/news/monsantos-roundup-enough-make-you-sick, last visited July 20, 2016.
[4] *See id.*

70.    Monsanto also encouraged farmers to use Roundup as a desiccant to dry out their crops in order to harvest them faster.    Today, glyphosate is routinely sprayed directly on a host of non-genetically modified crops, including oats.[5]  On information and belief, this use of glyphosate is not for any health or environmental purpose and, instead, stems solely from a desire to increase profit margins through higher crop yield.

71.    Between 1996 and 2011, herbicide use in the United States increased by 527 million pounds, despite Monsanto's claims that genetically modified crops would reduce pesticide and herbicide use.[6]

72.    In 2015, the International Agency for Research on Cancer (IARC), a research arm of the World Health Organization, declared glyphosate a category 2A "probable" human carcinogen.  A summary of the study underlying this declaration was published in The Lancet Oncology, Vol. 16, No. 5 (May 2015).[7]  The IARC study noted such carcinogenic risk factors as DNA damage to human cells resulting from exposure to glyphosate.[8]  Glyphosate has been previously found to be a suspected human endocrine disruptor, with estrogenic effects even at extremely low concentrations.[9]

_____

[5] *See id.*
[6] *See id.*
[7] *Available at* http://www.thelancet.com/journals/lanonc/article/PIIS1470-2045%2815%2970134-8/abstract, last visited July 20, 2016.
[8] *See id.*
[9] *See* Thongprakaisang, S. *et al.*, "Glyphosate induces human breast cancer cells growth via estrogen receptors," 59 *Food & Chem. Toxicol.* 129 (June 2013), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/23756170, last visited July 20, 2016; *see also, e.g.*, Gasnier, C. *et al.*, "Glyphosate-based herbicides are toxic and endocrine disruptors in

73.     In November 2015, the European Food Safety Agency published conclusions suggesting that the combined use of glyphosate with other chemicals posed greater potential health risks than when glyphosate is used alone.   In light of those conclusions, in April 2016, following a review of products containing glyphosate and tallowamine, France's health and safety agency announced its intention to ban weed-killers that combine the two chemicals.[10]

74.     Glyphosate, as a biocide, functions by disrupting the shikimate pathway.[11] Although humans themselves do not have a shikimate pathway, the shikimate pathway is present in bacteria, including bacteria that inhabit the human gut, and are essential to proper immune functioning.   As a result, Glyphosate is suspected to disrupt human immune function.

75.     Studies examining low doses of glyphosate-based herbicides at levels that are generally considered "safe" for humans show that these compounds can nevertheless cause liver and kidney damage.[12]

---

human cell lines," 262(3) *Toxicology* 184 (Aug. 21, 2009), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/19539684, last visited July 20, 2016.

[10] *See* "France to Ban Some Glyphosate Weedkillers Amid Health Concerns," Reuters, Apr. 8, 2016, available at http://www.reuters.com/article/us-france-glyphosate-idUSKCN0X512S, last visited July 20, 2016.

[11] *See, e.g.*, Heike, H. & N. Amrhein, "The Site of the Inhibition of the Shikimate Pathway by Glyphosate," *Plant Physiol.* 66:823 (1980), *available at* http://www.plantphysiol.org/content/66/5/823.full.pdf, last visited July 20, 2016; *see also* http://www.glyphosate.eu/glyphosate-mechanism-action, last visited July 20, 2016.

[12] Myers, J. et al, "Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement," *Environ. Health* 2016 15:19, available at https://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0, last visited

76.    Glyphosate is derived from the amino acid glycine.  To create glyphosate, one of the hydrogen atoms in glycine is artificially replaced with a phosphonomethyl group.

77.    Glyphosate is not "Natural."

78.    Glyphosate is not present in "100% Natural Whole Grain Oats."

79.    On information and belief, glyphosate is used to increase oat harvest for commercial purposes; is not necessary to successful planting, growing, or harvesting of oats, is not a "natural" method of growing or harvesting oats, is applied to oats as a drying agent shortly before harvest, and is applied for commercial purposes only.

80.    Glyphosate is a dangerous synthetic substance, the presence and dangers of which should be disclosed and not one a reasonable consumer would expect to be found in a product labeled "Natural."

**D.    General Mills' Misleading Labeling and Omissions**

81.    General Mills' conduct in representing or labeling Nature Valley as natural and "Made with 100% Natural Whole Grain Oats" deceived and/or was likely to deceive the public.  Consumers were deceived into believing that the listed ingredients were all

---

July 20, 2016. *See also* Benedetti A.L., "The effects of sub-chronic exposure of Wistar rats to the herbicide Glyphosate-Biocarb, *Toxicol. Lett.* 2004 153(2):227–232, available at http://www.ncbi.nlm.nih.gov/pubmed/15451553, last visited July 20, 2016; Larsen K. et al, "Effects of Sublethal Exposure to a Glyphosate-Based Herbicide Formulation on Metabolic Activities of Different Xenobiotic-Metabolizing Enzymes in Rats," *Int. J. Toxicol.* 2014, available at http://www.ncbi.nlm.nih.gov/pubmed/24985121, last visited July 20, 2016; Mesnage R. et al, "Transcriptome profile analysis reflects rat liver and kidney damage following chronic ultra-low dose Roundup exposure," *Environ. Health* 2015 14:70, available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4549093/, last visited July 20, 2016.

the ingredients, and that the product is "Natural," consisting of "100% natural whole grain oats," and that nothing in Nature Valley was not "Natural." Instead, Nature Valley contains glyphosate, an unnatural biocide, and probable human carcinogen, with myriad other potential health effects.

82.    Consumers cannot discover the true nature of Nature Valley from reading the label. Consumers could not discover the true nature of Nature Valley even by visiting Nature Valley's website, which makes no mention of glyphosate. Discovery of the true nature of the ingredients requires knowledge of chemistry and access to laboratory testing that is not available to the average reasonable consumer.

83.    General Mills deceptively and misleadingly conceals material facts about the Products, namely, that the Products are not "Natural," "Made with 100% Natural Whole Grain Oats," and "healthy," because in fact the Products contain glyphosate; and the Products are not what a reasonable consumer would consider "Natural," "Made with 100% Natural Whole Grain Oats," and "healthy," because in fact they contain glyphosate.

84.    Plaintiff, and the members of the Class, are not at fault for failing to discover General Mills' wrongs earlier and had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice.

85.    The production process General Mills uses for Nature Valley is known only to General Mills and its suppliers. General Mills has not disclosed such information to Plaintiff or the Class members. Quantitative testing reveals the presence of glyphosate in Nature Valley, but only General Mills knows the methods by which its oats are grown,

harvested, and processed or what would account for the presence of glyphosate in Nature Valley.  General Mills' concealment tolls applicable statutes of limitations.

86.    To this day, General Mills continues to conceal and suppress the true nature, identity, source, and method of production of Nature Valley.

**E.    General Mills' Knowledge That Its Representations Were False**

87.    General Mills holds itself out to the public as a trusted expert in the growing, harvesting, and processing of oats.

88.    General Mills knew what representations it made on the labels of Nature Valley.  It also knew how the oats were grown, harvested, and processed, and that they were likely to contain glyphosate, an unnatural and dangerous herbicide.

89.    General Mills thus knew all the facts demonstrating that Nature Valley was mislabeled and falsely advertised, and that it had a duty to disclose the presence of glyphosate or cease labeling its products "Natural."

**F.    General Mills' Intention for Consumers to Rely on Its Misrepresentations**

90.    General Mills made the false, deceptive, and misleading representations and omissions intending for Plaintiff and the Class members to rely upon these representations and omissions in purchasing Nature Valley.

91.    In making the false, misleading, and deceptive representations and omissions at issue, General Mills knew and intended that consumers would purchase the Nature Valley when consumers would otherwise purchase a competing product.

92.    In its 2015 Annual Report, General Mills recognized consumers' desire for natural foods:

> Consumers are increasingly interested in natural foods with simple ingredients and are limiting things like gluten, simple carbohydrates and artificial ingredients. They also are looking for more protein, fiber, whole grains and organic products. And they are snacking more than ever. In categories where we applied a "consumer first" approach and responded to these changes, we posted good growth. For example, retail sales for our grain snacks grew 4 percent, and we gained nearly two points of market share on the strength of our Nature Valley and Fiber One brands.

*See* General Mills 2015 Annual Report at 3, available at http://bit.ly/2a9PEcS, last visited July 20, 2016.

93.    Expanding its portfolio of "natural" and "organic" brands is a cornerstone of General Mills' business strategy:

> U.S. industry sales for natural and organic foods have been growing at a double-digit pace over the past three years. And sales are projected to continue to grow at a double-digit rate. We've been building our capabilities for sourcing, manufacturing and marketing natural and organic brands for the past 15 years. With the acquisition of Annie's, Inc. in October 2014, we're now the fourth-largest natural and organic food manufacturer in the U.S. We have strong levels of innovation coming in 2016 across our brands, including new Cascadian Farm cereals, Annie's soups and Food Should Taste Good snack bars. We see great opportunities to grow our brands by innovating, and by increasing their distribution in natural and organic stores and in traditional grocery outlets.

*See* General Mills 2015 Annual Report at 6, available at http://bit.ly/2a9PEcS, last visited July 20, 2016.

94.    Consumers are not only willing to pay more for a product that purports to include "100% Natural" ingredients – they do so because they expect that product to be free of synthetic chemicals.

95.    In making the false, misleading, and deceptive representations and omissions at issue, General Mills knew and intended that consumers would pay more for

"Natural" or "100% Natural" oats that are free of unnatural agents than they would pay for oats that are not "Natural" or "100% Natural," furthering General Mills' private interest of increasing sales of its products and decreasing the sales of the truly all-natural and/or glyphosate-free products that are truthfully marketed by its competitors.

96.    General Mills knows that consumers prefer "Natural" and "100% Natural" foods, and foods that do not contain dangerous or potentially dangerous chemicals. General Mills knows that consumers will pay more for "Natural" or "100% Natural" foods or would not purchase the foods at all unless they were "Natural" and/or "100% Natural" and/or free from unnatural and potentially dangerous synthetic chemicals.

97.    Similarly, independent surveys confirm that consumers will purchase more "Natural" products than conventional products and will pay more for "Natural" products.

G.    **Consumers' Reasonable Reliance on General Mills' Misrepresentations**

98.    Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food.

99.    When Plaintiff and the Class members purchased Nature Valley, they did not receive disclosure of the presence of glyphosate.

100.    These misrepresentations and omissions were uniform and were communicated to Plaintiff and every other member of the Class at every point of purchase and consumption.

101.    Plaintiff and the Class members were among the intended recipients of General Mills' deceptive representations and omissions.

102.    Plaintiff and the Class members reasonably relied to their detriment on General Mills' misleading representations and omissions.

103.    General Mills' false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiff, the Class members, reasonable consumers, and the general public.

104.    General Mills' misleading affirmative statements further obscured what it failed to disclose.    Thus, reliance upon General Mills' misleading and deceptive representations and omissions may be presumed.

105.    General Mills made the deceptive representations and omissions with the intent to induce Plaintiff and the Class members to purchase Nature Valley.  Plaintiff's and the Class members' reliance upon such representations and omissions may be presumed.

106.    General Mills' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions.  Thus, Plaintiff's and the Class members' reliance upon such representations and omissions may be presumed as a matter of law; the representations and omissions were material; and a nexus between General Mills' conduct, on the one hand, and Plaintiff's and the Class members' decisions to purchase Nature Valley at a certain price, on the other hand, exists.

**H.    General Mills' Conduct and Plaintiff's and the Class Members' Injury**

107.    As an immediate, direct, and proximate result of General Mills' false, misleading, and deceptive representations and omissions, General Mills injured Plaintiff and the Class members in that they:

      a.    paid a sum of money for a product that was falsely represented;

      b.    paid a sum of money for a product containing glyphosate;

      c.    paid more for a product that was falsely represented than they would have paid had the product not been falsely represented;

      d.    were deprived of the benefit of the bargain because the Nature Valley products they purchased was different from what General Mills warranted;

      e.    were deprived of the benefit of the bargain because the Nature Valley products they purchased had less value than what was represented;

      f.    did not receive a product that measured up to their expectations as created by General Mills;

      g.    ingested (or caused their children to ingest) a substance that was other than what was represented;

      h.    ingested (or caused their children to ingest) a substance they did not expect or consent to;

      i.    ingested (or caused their children to ingest) a product that included an unnatural substance;

      j.    without their knowing consent, ingested (or caused their children to ingest) an herbicide that is harmful to their health or their children's health;

      k.    without their knowing consent, ingested (or caused their children to ingest) a substance that is, contains, or is produced with a known or suspected toxin, carcinogen, or hazardous substance;

l.      without their knowing consent, ingested (or caused their children to ingest) a substance that poses health or environmental risks;

m.      without their knowing consent, ingested (or caused their children to ingest) a substance that is otherwise harmful to the environment and/or the farmers and other workers who utilize or process such substance;

n.      ingested (or caused their children to ingest) a substance that was of a lower quality than what General Mills promised;

o.      were denied the benefit of knowing what they ingested (or caused their children to ingest);

p.      were caused unwittingly to support an industry that contributes to environmental, ecological, or health damage;

q.      were denied the benefit of supporting an industry that sells natural products and contributes to environmental sustainability; and/or

r.      were denied the benefit of the beneficial properties of the "Natural" products promised.

108.    Had General Mills not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been injured as listed above.  Accordingly, Plaintiff and the Class members have suffered "injury in fact" as a result of General Mills' wrongful conduct.

109.    Plaintiff and the Class members all paid money for Nature Valley but did not obtain the full value of the advertised products due to General Mills' misrepresentations and omissions.  Plaintiff and the Class members purchased, purchased more of, or paid more for Nature Valley than they would have had they known the truth about Nature Valley.  Accordingly, Plaintiff and the Class members have suffered "injury in fact" and lost money or property as a result of General Mills' wrongful conduct.

I.      **General Mills' Benefit from Its Misleading Representations and Omissions**

110.    As the intended, direct, and proximate result of General Mills' false, misleading, and deceptive representations and omissions, General Mills has been unjustly enriched through more sales of Nature Valley and higher profits at the expense of Plaintiff and the Class members.   As a direct and proximate result of its deception, General Mills also unfairly obtained other benefits, including the higher value associated with a "natural" brand, redirecting sales to it and away from its competitors, and increased sales of its other products.

111.    Plaintiff, and all other similarly situated consumers, did not bargain for Products that contain unnatural ingredients in exchange for their payment of the purchase price.

112.    Upon information and belief, General Mills has failed to remedy the problem with its products, thus causing future harm to consumers.   Plaintiff, Class Members, and future purchasers in the consuming public are at risk of real, immediate, and continuing harm if the Products continue to be sold as is and without adequate warning of the presence of glyphosate and of the health effects of ingesting glyphosate.

113.    Plaintiff would continue to purchase the Products again in the future if the Products were reformulated so that they did not contain glyphosate.

114.    General Mills has failed to provide adequate relief to Plaintiff or Class Members as of the date of filing this Complaint.

115.    Plaintiff contends that Nature Valley products were sold pursuant to unfair and unconscionable trade practices because the sale of the products offends public policy

and is immoral, unethical, oppressive, unscrupulous, and caused substantial economic injuries to Plaintiff and Class Members.

116.    Reasonable consumers do not expect products advertised as "Natural," "healthy," and "Made with 100% Natural Whole Grain Oats" to contain unnatural ingredients such as glyphosate.  Defendant's statements and other representations convey a series of express and implied claims and/or omissions that Defendant knows are material to the reasonable consumer in making a purchasing decision and, moreover, that Defendant intended for consumers to rely upon when choosing to purchase the products.

117.    Defendant misrepresented the nature, quality, and/or ingredients of the Nature Valley products, and/or failed to adequately disclose the health risks of ingesting the glyphosate contained in the Products, which was and is false, misleading, and/or likely to deceive reasonable consumers.  Reasonable consumers expect the presence of such ingredients to be disclosed so that they can make informed purchasing decisions.

118.    Therefore, the products are valueless, and not worth the purchase price that Plaintiff and Class Members paid for them, and/or are not what Plaintiff and Class Members reasonably intended to receive.

119.    Accordingly, Plaintiff seeks, individually and on behalf of all other similarly situated purchasers of the Products during the Class Period, injunctive relief and actual economic damages equaling the aggregate purchase price paid for the Products by Plaintiff and Class Members during the Class Period.

120.    Plaintiff also seeks declaratory relief in the form of an order declaring Defendant's conduct to be unlawful, as well as injunctive and equitable relief putting an

end to Defendant's misleading and unfair business practices, including clear and full disclosure of the presence of glyphosate in the Products and of the health effects of ingesting glyphosate and/or a reformulation of the Products so that the Products no longer contain glyphosate.

**CLASS ALLEGATIONS**

121.   Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

122.   This action is maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

123.   The class definition(s) may depend on the information obtained throughout discovery.   Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the claims and certain issues in this action on behalf of a Class of individuals defined as:

> All persons who purchased Nature Valley Products from a retail location within the United States during the period from four years before the filing of this complaint until the date of class certification (the "Class Period").

124.   Plaintiff also brings this action on behalf of the following Subclass of individuals:

> All Class members who are Illinois residents and purchased Nature Valley Products from a retail location within the State of Illinois.

125.   Plaintiff brings the Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

126.   Plaintiff reserves the right to amend the Class definitions if further information and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

127.   All members of the Class were and are similarly affected by the deceptive advertising of the Products and the relief sought herein is for the benefit of Plaintiff and members of the Class .

**A.     Numerosity**

128.   Based on the annual sales of the Products, and the popularity of the Products, it is readily apparent that the number of consumers in the Class is so large as to make joinder impracticable, if not impossible.  Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**B.     Predominance of Common Questions of Law and Fact**

129.   There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    a.    Whether Defendant's practices and representations related to the marketing, labeling, and sales of the Products were unfair, deceptive, fraudulent, and/or unlawful in any respect, thereby violating Minnesota law;

    b.    Whether Defendant breached an express warranty created through the labeling and marketing of its falsely labeled Products;

    c.    Whether Defendant's conduct as set forth above economically injured Plaintiff and Class; and

    d.    Whether Plaintiff and Class Members are entitled to injunctive

relief.

**C.    Typicality**

130.    The claims asserted by Plaintiff in this action are typical of the claims of the Class, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to the Class Members.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

**D.    Adequacy**

131.    Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent and she has retained counsel competent and experienced in both consumer protection and class action litigation.  Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the members of the Class.  Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**E.    Predominance and Superiority of Class Action**

132.    The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class Member predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

133.    A class action is superior to other available means for the fair and efficient adjudication of this controversy.    Individual joinder of the Class Members is not practicable and questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.  Each Class and New York Sub-Class Member has been damaged and is entitled to recovery as a result of the violations alleged herein.

134.    Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class  Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

135.    Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

**F.    Declaratory and Injunctive Relief**

136.    Certification also is appropriate under Rules 23(b)(1) and (b)(2) because Defendant acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate the injunctive relief sought on behalf of the Class.  Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## CAUSES OF ACTION

### COUNT I
### Violation of the Minnesota Prevention of Consumer Fraud Act
### Minn. Stat. § 325F.69

Plaintiff, Individually, and on Behalf of the Class

137.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

138.    The acts of General Mills, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

139.    These practices originated in and out of the State of Minnesota and were directed at the Class members.

140.    Minn. Stat. § 325F.69 Subd. 1 provides:

The act, use, or employment by any person of fraud, false pretenses, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged, is enjoined as provided in section 325F.70.

141.    General Mills sells Nature Valley food products, which falls within the meaning of "merchandise" under Minn. Stat. § 325F.68, Subd. 2.

142.    General Mills has labeled its Nature Valley products as "Natural" and "Made with 100% Natural Whole Grain Oats," has indicated that the products' main ingredient is "Whole Grain Oats," and has otherwise presented an image and marketing materials suggesting that the products contain 100% natural whole-grain oats, when in fact the products contain glyphosate, a synthetic chemical that has been deemed a probable human carcinogen by the World Health Organization.

33

143.    General Mills' pattern and practice of selling Plaintiff and the Class its Nature Valley Products without first informing them that the products contained glyphosate constitutes the use of fraud, false pretense, and deceptive practices and, thus constitutes multiple separate violations of Minn. Stat. § 325F.69.

144.    General Mills' material omission constitutes deceptive conduct that violates Minn. Stat. § 325F.69.  Specifically, Defendant omitted that Defendant's Nature Valley products were not "Natural" and "Made with 100% Natural Whole Oats" and, instead, that the products actually contained glyphosate, a synthetic, probable carcinogenic, chemical.

145.    This omitted fact was material in that a reasonable consumer would not have purchased Nature Valley products from General Mills, or would have paid less for Nature Valley products from General Mills, had they known about it prior to purchase.

146.    General Mills intended that Plaintiff and the Class rely upon the omission it made in connection with the sale of its Nature Valley products in violation of Minn. Stat. § 325F.69.

147.    General Mills has violated, and continues to violate, Minn. Stat. § 325F.69, which makes deceptive acts and practices unlawful.  As a direct and proximate result of General Mills' violation of § 325F.69, Plaintiff and other members of the Class have suffered damages in an amount to be determined at trial.

148.    As a result of General Mills' misconduct, Plaintiff and the Class have suffered damages and are entitled to injunctive and equitable relief including, but not

limited to, restitution and disgorgement and an award of attorneys' fees pursuant to Minn.

Stat. § 8.31, Subd. 3a.

## COUNT II
### Violation of Minnesota Unlawful Trade Practices Act
### Minn. Stat. § 325D.13

#### Plaintiff, Individually, and on Behalf of the Class

149.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

150.    The acts of General Mills, as described above, and each of them, constitute

unlawful, deceptive, and fraudulent business acts and practices.

151.    Minn. Stat. § 325D.13 provides:

No person shall, in connection with the sale of merchandise, knowingly
misrepresent, directly or indirectly, the true quality, ingredients or origin of
such merchandise.

152.    General Mills is a "person" within the meaning of § 325D.10.

153.    General Mills' unlawful conduct and deceptive trade practices includes, but

is not limited to Defendant's fraudulent omission that its Nature Valley products were not

"Natural" and "Made with 100% Natural Whole Oats" and, instead, that the products

actually contained glyphosate, a synthetic biocide and probable human carcinogen.

154.    These deceptive practices originated in the State of Minnesota and were

directed at the Class members.

155.    As a result of General Mills' practices described herein, Plaintiff has

suffered actual damages by purchasing Natural Valley products that she otherwise would

not have purchased, or by paying more for Natural Valley products than she would have

otherwise paid, had she known this fact prior to purchase.

156.    General Mills' conduct described herein constitutes a violation of Minn. Stat. § 325D.13, injuring Plaintiff and entitling her to damages and injunctive and equitable relief including, but not limited to, restitution and disgorgement and an award of attorneys' fees pursuant to Minn. Stat. § 8.31, Subd. 3a.

### COUNT III
**Violation of Minnesota Uniform Deceptive Trade Practices Act**
**Minn. Stat. § 325D.44**

Plaintiff, Individually, and on Behalf of the Class

157.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

158.    The acts of General Mills, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

159.    Minn. Stat. § 325D.44, Subd. 1 provides:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

(5) represents that goods or services have . . . characteristics, ingredients, uses, benefits . . . they do not;

(13) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

160.    General Mills' material omission constitutes deceptive conduct that violates Minn. Stat. § 325D.44.  Specifically, Defendant omitted that Defendant's Nature Valley products were not "Natural" and "Made with 100% Natural Whole Oats" at the time of sale and, instead, that the products actually contained glyphosate, an unnatural biocide.

161.    These unlawful practices originated out of the State of Minnesota and were directed at the Class members.

162.    As a result of General Mills' practices described herein, Plaintiff has suffered actual damages by purchasing Natural Valley products that she otherwise would not have purchased, or by paying more for Natural Valley products than she would have otherwise paid, had she known this fact prior to purchase.

163.    Because Defendant willfully engaged in such trade practices, knowing them to be deceptive, Plaintiff is entitled to recover damages and all other remedies available at law, including their costs and attorneys' fees under Minn. Stat. § 325D.45, Subd. 2.

## COUNT IV
## Based on Breach of Express Warranty

### Plaintiff, Individually, and on Behalf of the Class

164.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

165.    General Mills provided Plaintiff and other members of the Class with written express warranties including, but not limited to, warranties that Nature Valley were "Natural," "100% Natural," and "Made with 100% Natural Whole Grain Oats."

166.    These affirmations of fact or promises by General Mills relate to the goods and became part of the basis of the bargain.

167.    Plaintiff and members of the Class purchased Nature Valley believing them to conform to the express warranties.

168.    General Mills breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class, who bought Nature Valley but did not receive the goods as warranted.

169.    As a proximate result of the breach of warranties by General Mills, Plaintiff and the other members of the Class did not receive goods as warranted. Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they would not have purchased Nature Valley, or would have purchased Nature Valley on different terms.

## COUNT V
## Unjust Enrichment

Plaintiff, Individually, and on Behalf of the Class

170.    All of the foregoing paragraphs are re-alleged as if fully set forth herein. This cause of action is pleaded in the alternative to Plaintiffs' contract-based claims.

171.    As a result of General Mills' deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of Nature Valley, General Mills was enriched at the expense of Plaintiff and the other members of the Class through the payment of the purchase price, or for the payment of a price higher than otherwise would have been paid, for Nature Valley.

172.    As a result of General Mills' failure to disclose the presence of glyphosate in the Products, General Mills was enriched at the expense of Plaintiff and the other members of the Class through the payment of the purchase price, or for the payment of a price higher than otherwise would have been paid, for Nature Valley.

173.    Under the circumstances, it would be against equity and good conscience to permit General Mills to retain the ill-gotten benefits that it received from Plaintiff and the other members of the Class, in light of the fact that the Nature Valley products purchased by Plaintiff and the other members of the Class were not what General Mills purported them to be. Thus, it would be unjust or inequitable for General Mills to retain the benefit without restitution to Plaintiff and the other members of the Class for the monies paid to General Mills for Nature Valley.

**COUNT VI**
**Violation of the Illinois Food, Drug, and Cosmetic Act**
**410 ILCS 620/2.1, *et seq.***

Plaintiff, Individually, and on Behalf of the Subclass

174.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

175.    Plaintiff brings this cause of action on behalf of members of the Subclass.

176.    General Mills sold its Products in the State of Illinois.

177.    Plaintiff and the other Subclass Members are "Persons" as defined by 410 ILCS 620/2.1.

178.    General Mills Products are "Food" as defined under 410 ILCS 620/2.3 because they are "articles used for food or drink in man[.]"

179.    Nature Valley Products are "adulterated" foods as defined under 410 ILCS 620/10 because they "bear[] or contain[] any poisonous or deleterious substance which may render [them] injurious to health[.]"

180.    Nature Valley Products are "contaminated with filth" as defined under 410 ILCS 620/2.15 because they are "not securely protected . . . as far as may be necessary by all reasonable means, from all foreign or injurious contaminations."

181.    Nature Valley Products are "misbranded" as defined under 410 ILCS 620/2.11 because the labeling or advertisement of the products:

   a.    is misleading in light of the representations made or suggested by statement, word, design, device, sound, or any combination thereof;

   b.    fails to reveal material facts in the light of the representations made or suggested by statement, word design, device, sound, or any combination thereof; and/or

   c.    fails to reveal material facts with respect to the consequences which may result from the use of the products to which the labeling or advertisement related under the conditions of use prescribed in the labeling or advertisement thereof or under such conditions or use as are customary and usual.

182.    General Mills' sale of its Products violates one or more enumerated acts prohibited under 410 ILCS 620/3, including but not limited to:

   a.    the manufacture, sale, delivery, holding, or offering for sale any food that is adulterated or misbranded;

   b.    the adulteration or misbranding of any food;

   c.    the receipt in commerce of any food that is adulterated or misbranded and the delivery or proffered delivery thereof for pay or otherwise; and

   d.    the dissemination of any false advertisement.

183.    As a direct and proximate result of General Mills' wrongful conduct and violations of 410 ILCS 620, Plaintiff and the Subclass members have suffered damages in an amount to be proven at trial.

## COUNT VII
## Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
## 815 ILCS 505/1, *et seq.*

Plaintiff, Individually, and on Behalf of the Subclass

184. All of the foregoing paragraphs are re-alleged as if fully set forth herein.

185. Plaintiff brings this cause of action on behalf of members of the Subclass.

186. General Mills sold its Products in the State of Illinois.

187. General Mills is a "person" as that term is defined in 815 ILCS 505/1(c).

188. Plaintiff and the Subclass members are "consumers" as that term is defined in 815 ILCS 505/1(e).

189. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

190. General Mills has violated the Illinois CFA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers. Specifically, General Mills has misrepresented the true nature, quality, and ingredients of the Products, thereby disseminating representations or omissions that are false, deceptive, and likely to mislead a reasonable consumer, such as Plaintiff and Subclass members.

41

191.    General Mills misrepresented and/or omitted facts about the presence of glyphosate in the Products and the health effects of ingesting glyphosate, which were and are material to Plaintiff's and Subclass members' decisions to purchase the Products.

192.    General Mills' sale of the Products is an unfair method of competition, unconscionable act and practice, and an unfair and deceptive act and practice in the conduct of its business.

193.    As a result of General Mills' deceptive and unfair acts, Plaintiff and Subclass members have been damaged in the amount of the aggregate retail sales of the Products throughout the Class Period.

194.    General Mills' conduct offends established public policy, and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

195.    General Mills should also be ordered to cease and/or continue ceasing its deceptive and unfair advertising, and should be made to engage in a corrective advertising campaign, to inform consumers of the presence of glyphosate in the Products and the health effects of ingesting glyphosate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of herself and the proposed Class providing such relief as follows:

A.    Certification of the Class proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff as representative of the Class; and appointment of her undersigned counsel as counsel for the Class;

B.    A declaration that General Mills is financially responsible for notifying

members of the Class of the pendency of this suit;

C.     An order requiring an accounting for, and imposition of, a constructive trust upon all monies received by General Mills as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

D.     Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees, pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

E.     Injunctive relief pursuant to Minnesota law and common law, enjoining General Mills' unlawful and deceptive acts;

F.     Injunctive relief and statutory or actual damages pursuant to Minnesota law;

G.     Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: August 24, 2016                s/ Brian C. Gudmundson
_____
                                      Brian C. Gudmundson (MN Lic, #0336695)
                                      Wm. Dane DeKrey (MN Lic, #0396847)
                                      **ZIMMERMAN REED, LLP**
                                      1100 IDS Center, 80 S 8th St.
                                      Minneapolis, MN 55402
                                      Telephone: (612) 341-0400
                                      brian.gudmundson@zimmreed.com
                                      dane.dekrey@zimmreed.com

                                      Kim E. Richman
                                      **THE RICHMAN LAW GROUP**
                                      81 Prospect Street
                                      Brooklyn, New York 11201

Telephone: (212) 687-8291
Facsimile: (212) 687-8292
krichman@richmanlawgroup.com

Beth E. Terrell
Adrienne McEntee
**TERRELL MARSHALL LAWGROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
bterrell@terrellmarshall.com
amcentee@terrellmarshall.com

Lori G. Feldman
Courtney E. Maccarone
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
lfeldman@zlk.com
cmaccarone@zlk.com

Edward A. Wallace
Amy E. Keller
Adam Prom
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
eaw@wexlerwallace.com
aek@wexlerwallace.com
ap@wexlerwallace.com

***Attorneys for Plaintiff and Proposed Class***