UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN RE: GENERAL MILLS GLYPHOSATE
LITIGATION,

**MEMORANDUM OF LAW & ORDER**
Civil File No. 16-2869 (MJD/BRT)

Brian C. Gudmundson and Bryce D. Riddle, Zimmerman Reed LLP; Kim E. Richman, Richman Law Group; Beth E. Terrell and Adrienne D. McEntee, Terrell Marshall Law Group PLLC; Lori G. Feldman and Courtney E. Maccarone, Levi & Korsinsky LLP; Edward A. Wallace, Amy E. Keller, and Adam M. Prom, Wexler Wallace LLP; Stephen R. Basser, Barrack, Rodos & Bacine; and John G. Emerson, Emerson Scott, LLP; Counsel for Plaintiffs and the Putative Class.

Jerry W. Blackwell, Benjamin W. Hulse, and Emily A. Ambrose, Blackwell Burke P.A.; David T. Biderman and Charles C. Sipos, Perkins Coie LLP; Counsel for Defendant General Mills, Inc.

## I. INTRODUCTION

This matter is before the Court on Defendant General Mills, Inc.'s Motion to Dismiss the Consolidated Class Action Complaint. [Docket No. 54] The Court heard oral argument on May 30, 2017. Because Plaintiffs fail to assert a plausible claim, the Court grants the motion to dismiss.

## II. BACKGROUND

### A. Factual Background

1

According to Plaintiffs' Complaint:

Defendant General Mills, Inc. ("General Mills" or "Defendant") is a Delaware corporation headquartered in Minnesota. (Consolidated Class Action Complaint ("Compl.") ¶ 30.) Defendant manufactures, markets, sells and distributes oat-based food products under the trademark Nature Valley. (Id. ¶ 31.) The products at issue in this lawsuit are 23 flavors of Nature Valley products in 8 categories: Nature Valley crunchy granola bars in at least 6 flavors, Trail Mix chewy granola bars in at least 2 flavors, Sweet & Salty granola bars in at least 2 flavors, Breakfast Biscuits in at least 3 flavors, Biscuits in at least 2 flavors, Oatmeal Squares in at least 4 flavors, Oatmeal Bars in at least 2 flavors, and Oatmeal Bistro Cups in at least 2 flavors (collectively, "Nature Valley Products" or "Products"). (Id. ¶ 5.)

The central allegation in the Complaint is that Defendant's Nature Valley Products are labelled as "Made with 100% Natural Whole Grain Oats," and this claim is misleading, false, and deceptive because Nature Valley Products contain trace amounts of the chemical glyphosate, an herbicide and desiccant, which is commonly sprayed on oat crops to dry them. (Compl. ¶¶ 1-2, 13, 70, 73.) An independent laboratory has reported that Nature Valley Products contain 0.45

parts per million of glyphosate. (Id. ¶ 13.) Plaintiffs claim that "the oats are most likely the source" of the trace amounts of glyphosate found in the Nature Valley Products, but "only General Mills knows . . . what would account for the presence of glyphosate in Nature Valley." (Id. ¶¶ 2 n.1, 89.)

Glyphosate was invented by Monsanto and marketed as a biocide under the name Roundup. (Compl. ¶ 11.) Farmers apply glyphosate to oats as a drying agent before harvest in order to increase the oat harvest, which is not a "natural" method of growing or harvesting oats. (Id. ¶ 83.) Plaintiffs claim that glyphosate is not "natural," but rather is an "unnatural" "synthetic biocide." (Id. ¶¶ 10, 12.) It is created by artificially replacing one of the hydrogen atoms in the amino acid glycine with a phosphonomethyl group. (Id. ¶ 80.)

Plaintiffs are Mary Wolosyzn, an Illinois resident; Edward Salamanca, a California resident; Nesha Ritchie, a California resident; and Yesenia Nuez, a New York resident. (Compl. ¶¶ 32-35.) All four Plaintiffs claim that they saw, relied upon, and reasonably believed Defendant's representation on the product box that Nature Valley Products are "Made with 100% Natural Whole Grain Oats." (Compl. ¶ 36.) They each purchased particular flavors and varieties of

3

Nature Valley Products on several occasions and would not have done so if they had known that the Products contained glyphosate. (Id. ¶¶ 32-35, 39.)

## B. Procedural History

On December 8, 2016, the Court granted a motion to consolidate multiple glyphosate cases brought against Defendant General Mills. [Docket No. 43] On January 9, 2017, Plaintiffs Wolosyzn, Salamanca, Ritchie, and Nuez filed a Consolidated Class Action Complaint against General Mills. [Docket No. 47]

The Consolidated Class Action Complaint asserts: Count 1: Violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69; Count 2: Violation of the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13; Count 3: Violation of Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44; Count 4: Breach of Express Warranty; Count 5: Unjust Enrichment; Count 6: Violation of the Illinois Consumer Fraud and Deceptive Business Act, 815 ILSC 505/1, et seq.; Count 7: Violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.; Count 8: Violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.; Count 9: Violations of California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200, et seq.; Count 10: Violation of the New York General

4

Business Law § 349; and Count 11: Violation of the New York General Business Law § 350.

The Consolidated Class Action Complaint seeks certification of a national class of individuals who purchased Nature Valley Products during the Class Period. (Compl. ¶ 127.) It also seeks certification of state classes for California, Illinois, and New York residents who purchased Nature Valley Products within their respective states. (Id. ¶ 128.) Plaintiffs seek declaratory relief, injunctive relief, restitution, disgorgement, statutory and monetary damages, and a constructive trust. (Id. at pp. 53-54.)

Defendant has now brought a motion to dismiss Plaintiffs' Complaint based on lack of standing, the primary jurisdiction doctrine, failure to state a claim upon which relief may be granted, and failure to plead fraud with particularity. Defendant has also filed a motion to strike certain allegations in the Complaint regarding the human health risks posed by trace amounts of glyphosate in packaged food. The Court grants Defendant's motion to dismiss based on failure to state a claim upon which relief can be granted. In light of that dismissal, the Court denies the motion to strike as moot.

## III. DISCUSSION

### A. Standing

### 1. Standing Requirement

> Article III requires an injury [to] be concrete, particularized, and actual or imminent. An alleged injury cannot be too speculative for Article III purposes. If there is no actual harm, then there must at least be an imminent harm. As the Supreme Court emphasized [], mere speculation that injury did or might occur cannot satisfy the requirement that any injury in fact must be fairly traceable to the alleged source.

Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1030 (8th Cir. 2014) (citations omitted).

"In the context of defective products, it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect." Id. at 1030 (citation omitted).

### 2. Whether Plaintiffs Have Shown that the Products Contain Glyphosate

Defendant claims that Plaintiffs lack standing because they have failed to allege that glyphosate is found in all Nature Valley Products, and, thus, have failed to allege that the Products purchased by Plaintiffs actually contained glyphosate. The Court rejects this argument.

This case is not like Wallace, in which the plaintiffs' allegations did not establish that all or even most of the products at issue contained the relevant

6

defect and, so, it was "pure speculation" to conclude that the particular packages purchased by the plaintiffs were defective. 747 F.3d at 1030-31. At this stage, Plaintiffs have alleged that <u>all</u> Nature Valley Products contain glyphosate. Specifically, Plaintiffs have alleged that "[t]he Products at issue do not comprise '100% natural whole grain oats,' but instead contain the chemical glyphosate." (Compl. ¶ 1.) Plaintiffs have further alleged:

> General Mills deceptively and misleadingly conceals material facts about the Products, namely, that the Products are not "100% Natural," or "Made with 100% Natural Whole Grain Oats" because in fact the Products contain glyphosate; and the Products are not what a reasonable consumer would consider "100% Natural" or "Made with 100% Natural Whole Grain Oats" because they contain glyphosate.

(<u>Id.</u> ¶ 87.)

Defendant's objections that these allegations are not true and concerns regarding the details of the alleged testing are issues properly addressed at a later stage in the proceedings. Accepting Plaintiffs' factual allegations as true, they have sufficiently pled that all Nature Valley Products contain trace glyphosate and, thus, all Nature Valley Products purchased by Plaintiffs necessarily contained glyphosate.

### 3. Whether Plaintiffs Have Standing to Bring Claim Based on Substantially Similar Products

"The named plaintiffs in a class action may not rely on injuries that the putative class may have suffered, but instead must allege that they personally have been injured." Chin v. Gen. Mills, Inc., No. CIV. 12-2150 (MJD/TNL), 2013 WL 2420455, at *3 (D. Minn. June 3, 2013) (citations omitted). Thus, Plaintiffs lack standing to assert claims based on products that they did not purchase. Id.

Defendant argues that, in this case, Plaintiffs lack standing to bring claims based on the 20 flavors or varieties of Nature Valley Products that were not purchased by any Plaintiffs. The Complaint alleges that Plaintiffs purchased Oats 'n Honey crunchy granola bars, Peanut Butter crunchy granola bars, and Fruit & Nut Trail Mix chewy granola bars. (Compl. ¶¶ 32-35.)

All Nature Valley Products, as defined by Plaintiffs, contain the identical label claim that they are "Made with 100% Natural Whole Grain Oats," and, according to Plaintiffs, all contain glyphosate-tainted oats. (Compl. ¶¶ 1, 4-5.) Plaintiffs assert that they all relied on an identical representation that Nature Valley Products were "Made with 100% Natural Whole Grain Oats."

The Court holds that, based on the allegations of glyphosate on all oat-based Nature Valley Products, which also all bear the same "Made with 100%

8

Natural Whole Grain Oats" label, the products purchased by Plaintiffs can be defined as Nature Valley crunchy granola bars and chewy granola bars. The particular flavors of these two products do not define still narrower categories of products but, rather, are immaterial varieties of the same products. Cf. Chin, at *3-4 (addressing Nature Valley products and not defining different flavors of the same types of granola bars to be different products for purpose of standing). Thus, Plaintiffs have standing to assert the claims set forth in the Complaint as to Nature Valley crunchy granola bars and Nature Valley chewy granola bars. Because no Plaintiff purchased Sweet & Salty granola bars, Breakfast Biscuits, Biscuits, Oatmeal Squares, Oatmeal Bars or Oatmeal Bistro Cups, Plaintiffs lack standing to pursue their claims as to these products.

### 4. Whether Plaintiffs Have Standing to Assert Claims for Injunctive Relief

> [T]o seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 794 (8th Cir. 2016) (citation omitted).

In Plaintiffs' Complaint, they seek injunctive relief including "(1) removing any statement that the product is '100% Natural,' 'Natural,' or any similar claim; (2) adding a clear and full disclosure of the presence of glyphosate in the Products; and/or (3) a reformulation of the Products so that they no longer contain glyphosate." (Compl. ¶ 124.) Plaintiffs have also pled that they would consider purchasing Nature Valley Products again if they were free of glyphosate. (Id. ¶ 40.) Further, they "would continue to purchase the Products in the future if the Products were reformulated so that they did not contain glyphosate." (Id. ¶ 117.)

Defendant argues that Plaintiffs lack standing to pursue injunctive relief because, in their Complaint, they admit that they have no intention of purchasing Nature Valley Products as the currently exist. (Compl. ¶ 22 ("Had Plaintiffs known at or before the time of purchase that the Products, in fact, contain glyphosate, a synthetic biocide, they would not have purchased or would not have paid as much for the products.").) Defendant concludes that Plaintiffs fail to allege that they will continue to be injured by the existence of trace amounts of glyphosate in Nature Valley Products as they currently exist.

The Court concludes that, if Plaintiffs will never buy Nature Valley Products or be misled by the label on the Products again, then there is no threat of injury and no standing for injunctive claims, regardless of the states of mind of members of the putative class. See, e.g., Romero v. Flowers Bakeries, LLC, No. 14-CV-05189-BLF, 2015 WL 2125004, at *7 (N.D. Cal. May 6, 2015). But see, e.g., Henderson v. Gruma Corp., No. CV 10-04173 AHM AJWX, 2011 WL 1362188, at *7-8 (C.D. Cal. Apr. 11, 2011). However, here, Plaintiffs have alleged that they would buy Nature Valley Products if Defendant eliminated glyphosate. Unlike other false labelling cases, where, for example, the ingredient list belied the labelling claim, Plaintiffs have no way of knowing if Defendant has eliminated glyphosate and made the "100% Natural" claim "true" (as defined by Plaintiffs), without first buying the Nature Valley Products to test them. Thus, a threat of injury still exists to Plaintiffs because they do want to purchase Nature Valley Products but will have no way of knowing in the future if the labels are accurate absent an injunction. The Court holds that Plaintiffs have standing to seek injunctive relief.

### B. Primary Jurisdiction Doctrine

As one of Defendant's alternative arguments, it asserts that the Court should dismiss this matter without prejudice under the primary jurisdiction

doctrine because, in November 2015, the FDA announced "the establishment of a docket to receive information and comments on the use of the term 'natural' in the labeling of human food products." 80 Fed. Reg. 69905-01, 69905 (Nov. 12, 2015).

> The doctrine of primary jurisdiction applies to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. Under the doctrine of primary jurisdiction a court may leave an issue for agency determination when it involves the special expertise of the agency and would impact the uniformity of the regulated field. No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.

Chlorine Inst., Inc. v. Soo Line R.R., 792 F.3d 903, 909 (8th Cir. 2015) (citations omitted). Courts "are always reluctant, however, to invoke the doctrine because added expense and undue delay may result." Access Telecommunications v. Sw. Bell Tel. Co., 137 F.3d 605, 608 (8th Cir. 1998).

The Court concludes that it need not address Defendant's primary jurisdiction argument because, regardless of whether and how the FDA does decide to take up the definition of the term "natural," which it has so far declined to do, the particular claims in this case are simply not plausible. See, e.g., Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009)

12

(noting that determination of this issue "is not a technical area in which the FDA has greater technical expertise than the courts—every day courts decide whether conduct is misleading").

## C. Failure to State a Claim

### 1. Rule 12(b)(6) Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

> defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

### 2. Basis for Plaintiffs' Claims

Here, Plaintiffs claim that glyphosate is a synthetic chemical and that a reasonable consumer would not expect a product labeled as being "Made with 100% Natural Whole Grain Oats" to contain a synthetic biocide. (Compl. ¶ 84.) Plaintiffs claim that Defendant breached its promise that its Products would contain "100% Natural Whole Grain Oats," because the Products contained trace amounts of glyphosate. (Id. ¶¶ 169-71.) Each of Plaintiffs' claims depends on the statement "Made with 100% Natural Whole Grain Oats" being misleading, false, deceptive, fraudulent, or misrepresentative solely because trace amounts of glyphosate are found in the Products.

The Court concludes that Plaintiffs have failed to plausibly allege that the statement "Made with 100% Natural Whole Grain Oats" means, or could be interpreted by a reasonable consumer to mean, that there is no trace glyphosate in Nature Valley Products. It is implausible that a reasonable consumer would believe that a product labelled as having one ingredient – oats – that is "100% Natural" could not contain a trace amount of glyphosate that is far below the

14

amount permitted for organic products. The Court further concludes Plaintiffs fail to state a claim because Defendant did not represent or warrant that Nature Valley Products would be free from trace glyphosate.

### 3. Belief of a Reasonable Consumer and Comparison to Organic Products

While the question of whether a consumer's belief is "reasonable" is often a fact question to be determined at a later stage, Supreme Court precedent, such as Iqbal, requires federal courts to assess, at the motion to dismiss stage, whether a complaint alleges sufficient facts to state a claim for relief that is plausible on its face. Thus,

> [g]enerally the question whether a business practice is deceptive is an issue of fact not appropriate for decision on a motion dismiss. However, dismissal of such claims is appropriate where the plaintiff fails to show the likelihood that a reasonable consumer would be deceived.

Carrea v. Dreyer's Grand Ice Cream, Inc., No. C 10-01044 JSW, 2011 WL 159380, at *5 (N.D. Cal. Jan. 10, 2011) (granting motion to dismiss when, "[h]aving reviewed the product packaging itself, the court concludes as a matter of law that a reasonable consumer would not likely be deceived by the Drumsticks packaging to believe that the products are made of the original ingredients of the 1928 recipe, as Plaintiff alleges"), aff'd, 475 F. App'x 113 (9th Cir. 2012). See also

15

Ibarrola v. Kind, LLC, 83 F. Supp. 3d 751, 756-57 (N.D. Ill. 2015) (dismissing as implausible claim that "'no refined sugars' [] mean[t] that the Vanilla Blueberry Clusters contained only 'naturally occurring' sugars that had not been refined at all" because "sugar cane in its natural state is a grass that contains jointed stalks resembling bamboo"); Pelayo v. Nestle USA, Inc., 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (finding claim based on "All Natural" label on pasta to be implausible and noting that "the reasonable consumer is aware that Buitoni Pastas are not springing fully-formed from Ravioli trees and Tortellini bushes") (citation omitted).

The Court concludes that it is not plausible to allege that the statement "Made with 100% Natural Whole Grain Oats" means that there is no trace glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label. It would be nearly impossible to produce a processed food with no trace of any synthetic molecule.

The representation "Made with 100% Natural Whole Grain Oats" cannot plausibly be interpreted to be more restrictive with regard to synthetic residue than the standard for labelling a product as "organic" under federal law. See, e.g., Pelayo, 989 F. Supp. 2d at 979 ("Consumers generally conflate the notions of

16

'natural' and 'organic,' or hold products labeled 'organic' to a higher standard than products labeled "natural," and, thus, it is implausible that a reasonable consumer would believe ingredients allowed in a product labeled 'organic,' such as the Challenged Ingredients, would not be allowed in a product labeled 'all natural.'"). Cf. Buetow v. A.L.S. Enters., Inc., 650 F.3d 1178, 1186 (8th Cir. 2011) ("We doubt there are many hunters so scientifically unsophisticated as to believe that any product can 'eliminate' every molecule of human odor. . . . [A] district court errs when it ignores the principle that text must yield to context and make[s] a fortress out of the dictionary.") (citation omitted).

Under federal regulations, foods bearing the "organic" label are allowed to contain chemical pesticide residue, so long as it is less than 5 percent of EPA tolerance for the detected residue. See 65 Fed. Reg. 80548-01, 80629 (Dec. 21, 2000). Here, the Products satisfy the federal standard for organic labelling with regard to the small amount of glyphosate found in the Products. Thus, it is not plausible that a product can satisfy the organic standard for biocides yet its label can be deemed be false for stating that it is natural because it contains trace amount of biocides. Satisfaction of the organic standard might not be relevant for other types of "natural" claims. However, organic labelling rules are aimed

17

at the exact issue in this case – the amount of pesticides and biocides applied to crops and found in products.

### 4. Breach of Express Warranty

The Court further concludes Plaintiffs failed to plausibly allege a breach of warranty because Defendant did not warrant that Nature Valley Products would be free from trace glyphosate. The product packaging states "Made with 100% Natural Whole Grain Oats." And there is no dispute that the Products were made with whole grain oats that, themselves, are "100% Natural." Even if the glyphosate traces are present on the oats, there is no allegation that the oats, themselves, are not natural. The packaging does not state that the Product, as a whole, is "100% Natural." See Chin, 2013 WL 2420455, at *7 (holding that express warranty language must be read in the context of the entire package). It is not plausible that a representation that one ingredient in a product – in this case, oats – is "100% Natural" means that the product as a whole does not contain traces of synthetic ingredients. Plaintiffs cannot claim a breach or misrepresentation based on a warranty that Defendant never gave.

Because the Court dismisses Plaintiffs' Complaint for failure to state a claim, the Court need not reach Defendant's alternative arguments regarding Rule 9(b), presuit notice, or privity.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Plaintiffs' Request for Leave to File Supplemental Authority [Docket No. 72] is **GRANTED**.

2. Defendant General Mills, Inc.'s Motion to Dismiss the Consolidated Class Action Complaint [Docket No. 54] is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 12, 2017  s/ Michael J. Davis
Michael J. Davis
United States District Court